UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HENRY HERNANDEZ,

       Plaintiff,

v.                                        Case No. 2:04-cv-214
                                        HON. RICHARD ALAN ENSLEN

UNKNOWN VANSLOTEN, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Henry Hernandez, an inmate currently confined at the Bellamy Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants include Corrections Officer Vansloten, Corrections Officer Heck, Corrections Officer Headley, and Corrections Officer Golliday, all of whom are employed at the Chippewa Correctional Facility (URF).

Plaintiff's complaint alleges that on August 22, 2003, while he was confined at URF, Defendant Headley refused to give Plaintiff a shower and called Plaintiff a "chile bean."  Plaintiff claims that Defendant Headley had previously made racial comments towards Plaintiff.  Plaintiff filed a grievance regarding this conduct on August 23, 2003.  On August 31, 2003, Defendant Golliday stated that Plaintiff was hanging around with a bad crowd and asked Plaintiff if he was a homosexual.  Plaintiff stated that he was not, and asked Defendant Golliday why he was speaking to him in that manner.  Defendant Golliday then told Plaintiff to "go fucking lock up."  Plaintiff filed a grievance regarding this conduct.  On August 25, 2003, Plaintiff wrote a letter to the warden, complaining about the unprofessional conduct of Defendants Golliday and Headley.  On

September 4, 2003, Defendant Vansloten filed a major misconduct charge against Plaintiff for being off his bunk during count. On the same date, Plaintiff sent a complaint to prisoner affairs regarding the alleged misconduct of staff at URF. When Defendant Vansloten spoke to Plaintiff regarding the misconduct, he called Plaintiff a "rat" and a "snitch" and expressed his desire to see Plaintiff confined to punitive segregation.

Plaintiff states that following the incident with Defendant Vansloten, Defendant Heck refused to allow Plaintiff to shower and told Plaintiff that he had "nothing coming." Plaintiff filed a grievance on Defendant Heck on September 5, 2003, and on Defendant Vansloten on September 6, 2003. Plaintiff also filed a complaint with the Michigan State Police. The following week, Defendant Headley threatened Plaintiff because of his use of the grievance procedure and his conduct in filing complaints.

On September 19, 2003, Plaintiff received a hearing on the misconduct by Defendant Vansloten, after which Plaintiff was found guilty, despite evidence presented by Plaintiff to show that the ticket was retaliatory. On September 27, 2003, Plaintiff filed a grievance on Defendant Headley for threatening Plaintiff regarding his prior grievance. Plaintiff followed that with a letter to Assistant Deputy of Housing McQuiggen relating his fears of retaliation from URF staff. On October 3, 2003, the warden responded to Plaintiff's grievances by placing him on 90 days modified access to the grievance procedure. On November 11, 2003, Defendant Heck wrote a minor misconduct ticket on Plaintiff for loitering, which was later dismissed. On December 10, 2003, Plaintiff received a letter from Internal Affairs regarding his earlier complaints. In this letter, Mr. Marschke instructed Plaintiff that his complaints about staff must be addressed through the grievance process.

On December 12, 2003, Officer Blamer issued a minor misconduct report on Plaintiff, but Plaintiff was later found "not guilty."  On January 18, 2004, Plaintiff received notice that his request for rehearing of the major misconduct conviction had been denied by Richard B. Stapleton. Plaintiff claims that all of the alleged misconduct on the part of Defendants was motivated by a desire to retaliate against Plaintiff.

Plaintiff claims that Defendants' actions violated his First Amendment right to be free from retaliation.  Plaintiff is seeking compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motion for summary judgment, Defendants contend that Plaintiff's claim against Defendant Vansloten is barred by the "favorable termination requirement" set forth in *Edwards v. Balisok*, 520 U.S. 641 (1997) and *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias on the part of the decisionmaker that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses.  The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines.

- 4 -

*Wilkinson*, 125 S. Ct. at 1244.  In *Wilkinson*, the Court discussed the effect of its decisions in *Heck*

and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Wolff v. McDonnell*, 418

U.S. 539 (1974), on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.  Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks – not where it simply "relates to" – "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at 1254 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement).  *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence.  And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48.  The Court then concluded that because the plaintiffs' claims did

not necessarily imply the invalidity of their convictions or sentences, they could present these claims

in the context of a § 1983 action.  *Id.* at 1248.

Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing

necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable

under § 1983.  *Wilkinson*, 125 S. Ct. at 1247-48, *Edwards*, 520 U.S. at 646.  *See also Muhammad*

*v. Close*, 124 S. Ct. 1303 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated). Defendants state that Plaintiff was found guilty of the allegedly retaliatory major misconduct written by Defendant Vansloten, which resulted in him losing seven days of good time, so that his claim against Defendant Vansloten in barred by the favorable termination doctrine.

In response to the motion for summary judgment, Plaintiff cites Muhammad v. Close, *supra*, for the proposition that his claim is not barred by the favorable termination requirement so long as he is not seeking to have his misconduct expunged. Plaintiff states that because he is not seeking such relief, his retaliation claim against Defendant Vansloten may proceed. Plaintiff is incorrect. In *Muhammad*, the Supreme Court merely clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. As noted above, Plaintiff in this case lost good time as a result of the misconduct conviction. Therefore, Defendant Vansloten is entitled to summary judgment on Plaintiff's retaliation claim.

Defendants next state that they are entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the plaintiff must

- 6 -

be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants state that Plaintiff did not engage in protected conduct because his grievances lacked merit. Defendants further explain that the grievances were not meritorious because Plaintiff did not have a constitutional right to shower at a certain time or to be free from abusive language and general harassment. Defendants are incorrect. Grievances need not assert the violation of a constitutional right in order to be properly filed. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective 4/28/03). The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff has established that he was engaged in protected conduct.

Defendants next assert that they are entitled to summary judgment because Plaintiff has not shown that the adverse actions were motivated, at least in part, by the protected conduct. With regard to Defendant Headley, the undersigned notes that the alleged adverse conduct, the denial of a shower and the use of a racial slur on August 22, 2003, could not have been motivated by a desire to retaliate against Plaintiff because the incident occurred prior to Plaintiff filing a grievance on August 23, 2003. Therefore, because the chronology of events makes it impossible to infer retaliatory animus on the part of Defendant Headley, the undersigned recommends granting Defendant Headley summary judgment.

With regard to Plaintiff's claim against Defendant Golliday, Plaintiff alleges that on August 31, 2003, Defendant Golliday implied that Plaintiff was a homosexual and harassed him, ordering him to "go fucking lock up." There is no indication that this conduct was at all related to any desire to retaliate against Plaintiff because he filed grievances. "Merely alleging the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in his claim against Defendant Golliday.

With regard to Plaintiff's claim against Defendant Heck, Plaintiff states that on September 4, 2003, following the incident with Defendant Vansloten, Defendant Heck refused to allow Plaintiff to shower and told Plaintiff that he had "nothing coming." Plaintiff filed a grievance on Defendant Heck on September 5, 2003. Subsequently, Defendant Heck wrote a minor misconduct on Plaintiff, which was later dismissed. Defendant Heck attests that he wrote the minor misconduct on Plaintiff for loitering and excessive noise because Plaintiff had been standing in his cell doorway, yelling loudly enough that it could be heard at the officer's station. (*See* Defendant Heck's affidavit, ¶ 6, which is attached as an exhibit to Defendant's brief in support of the motion for summary judgment, docket #21.) Plaintiff denies this conduct and states that this determination is a question of fact. Because the minor misconduct was later dismissed, it appears that there is a genuine issue of material fact with regard to the facts surrounding the misconduct. A prisoner can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on

the part of the defendants could reasonably be inferred. *Manning v. Bolden*, 2001 WL 1580288 (6th Cir. Dec. 7, 2001) (unpublished) (citing Cain v. Lane, 857 F.3d 1139, 1143 n. 6 (7th Cir. 1988) and *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). The undersigned concludes that Plaintiff has sufficiently demonstrated a chronology of events showing that the alleged misconduct by Defendant Heck was motivated by a desire to retaliate against Plaintiff.

Defendants assert that the allegedly improper acts by Defendants Headley, Heck and Golliday do not rise past the level of a *de minimis* injury. Therefore, they do not constitute an adverse action as required by the court in *Thaddeus-X*, 175 F.3d at 394. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 603-04 (6th Cir. 2002).

> "In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse," as would "[h]arassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates," *Thaddeus-X,* 175 F.3d at 396, 398, or the deprivation of prescribed pain medication, *Hall*, 2000 WL 1679458, at *2. *See also Cruz v. Beto,* 603 F.2d 1178, 1180 (5th Cir.1979) (inmates segregated into a separate unit, number of inmates per room doubled, access to the commissary reduced, cell searches increased, recreation and educational programs limited, and inmates made ineligible for good time credits unless inmates would agree to drop lawsuits filed by a certain attorney); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996) (finding that blocking an expeditious transfer to protective custody would be an adverse action).

*Spies v. Voinovich*, 48 Fed. Appx. 520, 525 (6th Cir. 2002).

As noted above, Defendant Golliday allegedly asked Plaintiff if he was a homosexual and ordered him to "go fucking lock up." Such conduct is not such that it would deter an inmate of ordinary firmness from pursuing his constitutional rights. Defendant Headley allegedly denied Plaintiff his shower. However, as noted above, this occurred prior to Plaintiff writing a grievance.

Moreover, Defendant Headley attests that Plaintiff was denied a shower because he was not at his cell door at that appointed time.  (*See* Defendant Headley's affidavit, ¶ 5, which is attached as an exhibit to Defendant's brief in support of the motion for summary judgment, docket #21.)  Therefore, this conduct does not constitute an "adverse action" for purposes of asserting a retaliation claim.

With regard to Defendant Heck, Plaintiff claims that he denied Plaintiff a shower and that he wrote Plaintiff a minor misconduct after Plaintiff filed a grievance on him.  Plaintiff does not allege that he would have lost any good-time credits as a result of a conviction on the minor misconduct.  Minor misconduct convictions do not result in any punishment that could affect the duration of a prisoner's confinement, or that would constitute an atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution.").  Plaintiff fails to allege any facts showing that he would have suffered anything more than a temporary loss of privileges as a result of the minor misconduct.  In the opinion of the undersigned, no person of ordinary firmness would be deterred from filing complaints or grievances as a result of a minor misconduct ticket.

Finally, Defendants claim that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used

- 10 -

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).  As noted above, Plaintiff has failed to support his claim that Defendants violated his constitutional rights.  Therefore, the undersigned recommends that Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #20) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 9, 2005                      /s/ Timothy P. Greeley
                                            TIMOTHY P. GREELEY
                                            UNITED STATES MAGISTRATE JUDGE

- 11 -